IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALONZO W. GRIER,**

      **Petitioner,**

      v.                                                Civil Action No. 5:13cv110
                                                                (Judge Stamp)

**RUSSELL A. PURDUE, Warden**

      **Respondent.**

**REPORT AND RECOMMENDATION**

**I. BACKGROUND**

On August 19, 2013, the *pro se* petitioner, Alonzo W. Grier,(hereinafter Grier) an inmate at FCI Gilmer, filed a Habeas Corpus petition pursuant to 28 U.S.C. § 2241challenging the execution of his federal sentence in relation to a sentence imposed by the State of Pennsylvania. On September 16, 2013, Grier paid the required five dollar filing fee. On October 2, 2013, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On October 23, 2013, the respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause. On October 28, 2013, the court issued a Roseboro notice; and on November 19, 2013, Grier filed his arguments supporting the denial of the respondent's Motion. On May 30, 2014, the undersigned issued an Order directing the respondent to file a supplemental memorandum. On June 9, 2014, the respondent filed the requested response,

1

and on June 23, 2014, Grier filed a reply and requested issuance of the writ.

## II. FACTS

On February 17, 2004, Grier was arrested by the City of Pittsburgh Police Department after he delivered one piece of cocaine base to a police informant in exchange for $10. He appears to have been charged with Delivery of a Controlled Substance, Possession with Intent to Deliver, and Possession of a Controlled Substance. He was released on bond on February 20, 2004. On January 7, 2008, he entered a guilty plea in Allegheny County to Delivery, and the remaining possession counts were withdrawn. He was sentenced to 2-4 years imprisonment in the State Correctional Institution. (Doc. 1-1).

On August 14, 2005, Grier was arrested by the Pittsburgh Police Department after he was observed having an object which was consistent with the shape of a firearm protruding from his waistband. It appears he was subsequently charged with Carrying a Firearm without a License, being a Person not permitted to have Possession of a Firearm, and Possession of a Controlled Substance. He was again released on bond. On January 7, 2008, he entered a guilty plea in Allegheny County to all counts and was sentenced to serve 5-10 years in the State Correctional Institution with three years to run concurrent with jail sentence. (Doc. 1-1, p. 2).

On September 23, 2005, Grier was again arrested by the Pittsburgh Police Department and released on bond. On January 7, 2008, he entered a guilty plea in Allegheny County to Possession with Intent to Deliver and the remaining two counts, Possession of a Controlled Substance and Possession of Marijuana were withdrawn. He was sentenced to a term of three to six years in the State Correctional Institution. (Doc. 1-1, p.3).

On June 20, 2006, while he was on bond from his state charges, and before he pleaded guilty

2

in those three cases, a federal grand jury in the Western District of Pennsylvania returned a 4-count indictment against Grier in Case No. 2:06cr219, charging him with the following:

> Count 1 - Possession of a Firearm by a Convicted Felon on or about April 1, 2005, in violation of 18 U.S.C. § 922(g)(1);
>
> Count 2 - Possession With Intent to Distribute 5 Grams or More of Cocaine Base on or April 1, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(i)(B)(iii);
>
> Count 3 - Possession With Intent to Distribute Less Than 10 Grams of Heroin on or about April 1, 2005, in violation of 21 U.S.C. § 8441(a)(1) and (b)(1)(C);
>
> Count 4 - Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possession of Said Firearm in Furtherance of Said Drug Trafficking Crime on or about April 1, 2005 in violation of 18 U.S.C. § 924(c)(1)(A)(i).

(Doc. 19-1, p. 5).

On July 21, 2006, following the issuance of an arrest warrant, Grier was taken into custody in the Northern District of West Virginia. On August 2, 2006, Grier appeared before United States Magistrate Judge Francis X. Caiazza and made his initial appearance. Judge Caiazza issued a temporary detention order that same date. On August 8, 2006, Grier appeared before United States Magistrate Judge Robert C. Mitchell at which time he was arraigned and entered a plea of not guilty. That same date, Grier waived his right to a detention hearing and the final order of detention was issued.

On November 7, 2006, a federal grand jury in the Northern District of West Virginia returned a 10-count indictment in Case No. 1:06cr112 which charged the defendant with the following:

> Count 1 - Conspiracy to Possess With Intent to Distribute 50 Grams or More of Cocaine Base, and 500 Grams or More of Cocaine from in or around May 2006, to on or about July 25, 2006, in violation of 21 U.S.C. § 846;
>
> Counts 2 and 3 - Distribution of Cocaine Base- Aiding and Abetting on or about June 12, 2006, and June 13, 2006, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

Count 4 - Possession With Intent to Distribute Cocaine Base on or about June 13, 2006, in violation of 21 U.S.C.§ 841(a)(1) and (b)(1)(C);

Count 5- Distribution of Cocaine Base Within 1000 Feet of a Protected Location on or about July 17, 2006, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860;

Count 6- Possession With Intent to Distribute 50 Grams or More of Cocaine Base and 500 Grams or More of Cocaine- Attempting and Aiding and Abetting on or about July 25, 2006, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)

Count 7 -Possession With Intent to Distribute 50 Grams or More. of Cocaine Base and Less Than 500 Grams of Cocaine on or about July 25, 2006, in violation of 21 U.S.C.§§ 841(a)(1), (b)(1)(A) and (b)(1)(C).

On July 2, 2009, the prosecution of this case was transferred to the Western District of Pennsylvania pursuant to Rule 20 of the Federal Rules of Criminal Procedure. The case was docketed as Case No. 2:09cr212. On June 8, 2009, the Government filed an Information pursuant to 21 U.S.C. § 851 establishing a prior conviction for Possession With Intent to Distribute Cocaine Base. The conviction occurred on November 12, 1992, in the Court of Common Pleas of Westmoreland County. This conviction served to enhance the applicable statutory penalties relative to Count 2 of Criminal Action No. 2:06cr219.

On November 4, 2009, Grier appeared before United States District Judge David S. Cerone for a Rule 20 plea hearing during which Grier entered a guilty plea to Count 3 of the Indictment in Criminal Action No. 2:09cr212 as well as a guilty plea to Counts 1, 2 and 4 of the Indictment in Criminal Action No. 2:06cr219.

On May 31, 2011, Grier was sentenced in Case No. 2:06cr219 by the United States District Court for the Western District of Pennsylvania to a term of "110 months at each of Counts 1 and 2, which are to run concurrent, and a term of 60 months at Count 4, to run consecutive, for a total term

4

of 170 months. Terms to run concurrent with the sentence imposed by this Court at 2:09cr00212-001."[1] Grier's aggregate 170-month sentence commenced on the date it was imposed. (Doc. ).[2]

Grier has received 1,774 days of prior custody credit for the time period beginning April 1, 2005, the date he was arrested by the Pittsburgh Police Department and held in custody until April 3, 2005, when he was released on bond, and for the time period beginning July 25, 2006, the date he was arrested by federal authorities, through May 30, 2011, the day before his federal sentence commenced. Grier's current projected release date, including all projected Good Conduct Time, is December 17, 2018. (Doc. 18-6, p. 3). Grier will be released to Pennsylvania authorities upon his release, based on a detainer filed with the Bureau of Prisons. (Doc. 33-2, p. 2).

### III. CONTENTIONS OF THE PARTIES

**A.     The Petition**

Grier alleges that the Federal Government usurped its authority when it permitted the State of Pennsylvania to take primary custody and then re-secured custody causing him to serve his state convictions in installments. More specifically, Grier alleges that he appeared in state court on January 7, 2008, to answer to the charges lodged in Allegheny County. Grier further alleges that on January 28, 2008, the Allegheny County Sheriff transported him to the State Correctional Institution ("SCI") at Greene County to begin serving his state sentence. Grier then alleges that the Department of Corrections transferred him from SCI Greene to SCI Camp Hill where it was

---

[1] See Doc, 151 in 2:06-cr-00219-DSC-1 (Western District of Pennsylvania available on PACER,

[2] According to the Docket Sheet in Case No. 2:09-cr-00212-DSC-1, Grier was "committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 100 months at Count 3, said term to run concurrent with the sentence imposed by this Court at 2:06cr00219-001." See Doc. 42 available on PACER.

5

determined that there was an outstanding parole violation pending against him based on his pleas on January 7, 2008. Grier maintains that on February 12, 2008, the State Records Department of Corrections "stopped" his new commitment and reinstated his original commitment. Grier alleges he was then transferred to SCI Cresson. Following a meeting with the Pennsylvania Parole Board, Grier alleges he was determined to be a parole violator, and he was re-committed to serve the unexpired term of his original sentence. Finally, Grier alleges that on March 28, 2008, the United States Marshal Service "realized" that he has been moved and had him returned to federal custody at the Allegheny County Jail. Grier maintains that this action has caused his state sentence to be stopped until he is once again returned to that prison. Grier complains that this amounts to a violation of the core of his civil rights under the Fifth and Fourteenth Amendments, and if uncorrected, raises serious Eighth Amendment concerns with the overtones of a Thirteenth Amendment violation. For relief, Grier seeks the addition of "all State time to be served as time served from [his] Federal time." (Doc. 1, p. 8) In the alternative, Grier requests that he be sent back to state prison, with his federal sentence continuing to run. (Doc. 2, p. 7).[3]

**B.     The Response**

The Government argues that the petition should be dismissed because it lacks support both in law and fact. More specifically, the respondent maintains that the BOP correctly began computation of Grier's sentence on the date it was imposed and properly awarded him credit for that time served that was not already credited toward his state sentence. In his supplemental memorandum, the respondent clarifies that the United States gained primary custody over Grier

---

[3]The undersigned interprets this as a request that he be returned to state prison to serve his state sentence, and the BOP be required to designate the state facility as the place of his incarceration for the remainder of his federal sentence.

6

when he was arrested by federal authorities on July 26, 2006, and his federal sentence has been calculated with a credit for all time spent in pre-trial detention.

**C.    The Petitioner's Reply**

In his reply, Grier reiterates his claim that the state borrowed him from federal authorities, and the federal authorities were responsible for demanding his return back to their custody. Grier again alleges that federal authorities instead allowed the state to commence his state sentence in a Pennsylvania Correctional Institution before eventually gaining back his custody two months later. In the alternative, Grier argues that if the state maintained primary custody, then the federal government was responsible for returning him to the Pennsylvania Department of Corrections to avoid a due process violation. Grier maintains that the petition must be granted and relief awarded by "leveling the federal sentence so that the total sentence of state and federal equate to no more than intended or [he] be ordered returned to Pennsylvania with his federal sentence concurrently running." (Doc. 26, p.4). Following the respondent's supplemental response, Grier filed a supplemental reply in which he contends that the respondent has failed in establishing primary jurisdiction and further disputes the respondent's contention that if he was released to the state without a writ of prosequendum, said release amounts to harmless error.

## IV. STANDARD OF REVIEW

**A. <u>Motion to Dismiss</u>**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

7

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal,* where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). *See United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into [his] 'custody'' for service of that sentence."). The earliest possible date that a sentence can commence is the date of imposition. *See U.S. v. McLean*, 867 F.2d 609 (4th Cir. 1989)(unpublished)("A federal sentence cannot commence prior to the date it is pronounced.").Accordingly, in this case, the petitioner's federal sentence commenced on May 31, 2011, the date it was imposed.

Although the petitioner's federal sentence did not commence until May 31, 2011, the date it was imposed, he is nonetheless entitled to prior custody credit. 18 U.S.C. § 3585(b), states:

> defendant shall be given credit toward the service of a term of imprisonment for any time he spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

In this case, the records of the BOP establish that the petitioner has been granted 1,774 days of prior custody credit for the time period beginning April 5, 2005, the date he first was arrested by the Pittsburgh Police Department and held in custody until April 3, 2005, when he was released on bond, and for the time period beginning July 26, 2006, the date he was arrested by federal authorities through May 30, 2011, the day before his federal sentence commenced.

The petitioner does not dispute the amount of prior custody credit he received. Rather, it appears that he is arguing the "federal government" failed to follow protocol, and he is being forced

10

to serve his state sentence in installments. More specifically, the petitioner maintains that when the state "borrowed" him, the federal government failed to immediately resume his custody. It also appears that the petitioner may disagree that the federal court had primary jurisdiction in this matter.

Where, as here, a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993)(quoting In re Liberatore, 574 F.2d 78 (2d Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

In reviewing the exhibits contained in this case, it is clear that the petitioner was arrested by Pittsburgh City Police on February 7, 2004, and charged in Criminal Case No. 200409867 with delivery of cocaine. At this point, state authorities had primary custody of the plaintiff. However,

he was released on bond on February 20, 2004. Moreover, after his arrest on April 7, 2005, by Pittsburgh City Police, he was again released on bond and remained on bond until he was arrested by federal authorities on July 21, 2006. Upon that arrest, he remained in federal custody and, therefore, primary jurisdiction rested with federal authorities. The fact that the petitioner was borrowed by the State of Pennsylvania, pursuant to a writ of habeas corpus ad prosequendum did not relinquish primary jurisdiction by federal authorities.

The undersigned notes that upon first reviewing this matter, he was confused by the fact that Grier pleaded guilty to the state charges on January 7, 2008, but was not borrowed on the writ of ad prosequendum until January 28, 2008. Moreover, the response and supplemental response by the respondent has done little to clarify that confusion.[4] However, upon careful review of all the pleadings and exhibits, it seems clear that he was borrowed for purposes of a parole revocation hearing and not for purposes of pleading guilty to the three cases filed in Allegheny County[5]. However, even if Grier was "accidently" transferred to the State of Pennsylvania, without benefit of a writ of ad prosequendum, or if he began serving his state sentence in error, he has not suffered a violation of any constitutionally protected right. The fact remains that he has received all the prior custody credit to which he is entitled against his federal sentence, and the period from January 28,

---

[4]In his supplemental response, the respondent noted that he was unable to provide a copy of the writ because the same has not been provided to the BOP by the Commonwealth of Pennsylvania. However, the writ would have been filed with the US Marshal Service, and their central office for the Western District of Pennsylvania should have it on file.

[5]Grier was last paroled by the Pennsylvania Board of Probation and Parol on July 1, 2003. (Doc. 33-2, p. 5). It appears that Grier had a parole hearing at SCI-Cresson on March 17, 2008, and, by written decision dated March 24, 2008, and mailed April 3, 2008, he was recommitted to a state correctional institution to served his unexpired term concurrently, for a total unexpired term **when available**. (emphasis added)(Doc. 33-2, p. 4).

2008, until April 1, 2008, when he was confined in various Pennsylvania State Correctional facilities has not served to lengthen either his federal sentence or state sentence.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 17) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);*Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 128 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: July 1, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE